**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**DELTA DIVISION**

JOSHUA WILLIAMS,                                                           PLAINTIFF
ADC # 171122

v.                                   2:24CV00210-DPM-JTK

AUNDREA CULCLAGER, et al.                                        DEFENDANTS

### PROPOSED FINDINGS AND RECOMMENDATIONS

### INSTRUCTIONS

The following recommended disposition ("Recommendation") has been sent to United States District Judge D.P. Marshall Jr.   Any party may file written objections to all or part of this Recommendation.   If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objections; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation.   By not objecting, you may waive the right to appeal questions of fact.

### DISPOSITION

I.      **Introduction**

Joshua Williams ("Plaintiff") is currently an inmate at the Delta Regional Unit of the Arkansas Division of Correction ("ADC").   Plaintiff's claims in this case arise from the time Plaintiff was in custody at the East Arkansas Maximum Regional Unit ("E-Max") of the ADC. Plaintiff's Complaint is the operative pleading in this action.   (Doc. No. 1).

Plaintiff's deliberate indifference to serious medical needs claims against Defendants Captola Clinkscale and Rachel Hahn (collectively, "Defendants") in their individual capacities remain pending.   (Doc. No. 39).   Plaintiff's remaining claims and the remaining Defendants have been dismissed without prejudice.    (Doc. Nos. 39, 44).

On January 5, 2025, Defendants filed a motion for summary judgment on the merits of Plaintiff's claims, Brief in Support, and Statement of Undisputed Facts. (Doc. Nos. 48-50). Plaintiff has responded. (Doc. Nos. 55, 58, 59). Defendants have not filed a reply and the time for doing so has passed.

After careful consideration of the record before me, I recommend Defendants' Motion be granted.

## II.      Plaintiff's Pending Claims

According to Plaintiff, on March 18, 2024, he noticed black smoke pouring from the vent into his cell at the E-Max. (Doc. No. 1 at 4). Plaintiff says the smoke "caused him to gasp for air" and, after losing his breath, he collapsed onto the floor of his cell. (Id.). Plaintiff claims Defendants failed to provide proper medical care after the incident, resulting in difficulty breathing due to Plaintiff's asthma. (Id. at 3-4). Plaintiff asserts Defendants' actions violated his Eighth Amendment rights. (Id. at 9).

## III.     Summary Judgment Standard

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997). "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (other citations omitted)). "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'" Id. at 1135.

2

Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." Id.

In addition, the failure to properly support or address the moving party's assertion of fact can result in the fact considered as undisputed for purposes of the motion. Fed. R. Civ. P. 56(e). Indeed, Local Rule 56.1 provides that "[a]ll material facts set forth in the statement (of undisputed material facts) filed by the moving party . . . shall be deemed admitted unless controverted by the statement filed by the non-moving party . . . ." Rule 56.1 of the Local Rules for the United States District Court for the Eastern and Western Districts of Arkansas.

## IV.    Discussion

The Eighth Amendment prohibits cruel and unusual punishment. U.S. CONST. AMEND. VIII. This prohibition gives rise to the government's duty to provide medical care to prisoners. "The government has an 'obligation to provide medical care for those whom it is punishing by incarceration." Allard v. Baldwin, 779 F.3d 768, 772 (8th Cir. 2015) (citing Estelle v. Gamble, 429 U.S. 97, 103 (1976)). It follows that the "Eighth Amendment proscribes deliberate indifference to the serious medical needs of prisoners." Robinson v. Hager, 292 F.3d 560, 563 (8th Cir. 2002) (internal citation omitted). "A serious medical need is 'one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" Schuab v. VonWald, 638 F.3d 905, 914 (8th Cir. 2011) (internal citation omitted).

"Deliberate indifference may be demonstrated by prison guards who intentionally deny or delay access to medical care or intentionally interfere with prescribed treatment, or by prison doctors who fail to respond to prisoner's serious medical needs." Dulany v. Carnahan, 132 F.3d

3

1234, 1239 (8th Cir. 1997).    To succeed on a claim of deliberate indifference to a medical need, a plaintiff must show he had an objectively serious medical need and prison officials had actual knowledge of, but deliberately disregarded, that need.    Washington v. Denney, 900 F.3d 549, 559 (8th Cir. 2018); McRaven v. Sanders, 577 F.3d 974, 981 (8th 2009).

### A.    Defendants' Motion

Defendants offered the following undisputed facts in support of their Motion.

Plaintiff did not have an active diagnosis of asthma in March 2024.[1]    (Doc. No. 50 at ¶ 1; Doc. No. 50-1 at ¶ 4).

On March 18, 2024, Mr. Williams was seen by Defendant Clinkscale, LPN at 12:30 am for a segregation visit. Defendant Clinkscale noted no complaints.    (Doc. No. 50 at ¶ 2; Doc. No. 50-2 at 1-2).    (Doc. No. 50 at ¶ 2; Doc. No. 50-2 at 1-2).

On March 18, 2024, Mr. Williams was seen by Defendant Hahn, LPN at 1:00 am for a segregation visit.    (Doc. No. 50 at ¶ 3; Doc. No. 50-3).    Defendant Hahn noted no complaints. (Doc. No. 50 at ¶ 3; Doc. No. 50-3).

Various medical staff saw Plaintiff for segregation visits over the next five days.    (Doc. No. 50 at ¶¶ 4-16; Doc. No. 50-4 – Doc. No. 50-16).    None of the staff who saw Plaintiff noted any complaints by Plaintiff.    (Doc. No. 50 at ¶¶ 4-16; Doc. No. 50-3 – Doc. No. 50-16).

On March 22, 2024, Plaintiff first complained of headaches, stomach issues, and problems breathing following exposure to "toxic smoke."    (Doc. No. 50 at ¶ 17; Doc. No. 50-17).

---

[1] Defendants' Statement of Undisputed Facts provides that Plaintiff did not have a diagnosis of asthma and was not receiving treatment for asthma in April 2024.    (Doc. No. 50 at ¶ 1).    The Affidavit of Mahlon Maris, M.D., which Defendants offered in support of this fact, provides that Plaintiff did not have a diagnosis of asthma and was not receiving treatment for asthma in March 2024.    (Doc. No. 50-1 at ¶ 4).    The April date appears to be a scrivener's error. Plaintiff has not contested that he did not have a diagnosis of asthma and was not receiving treatment for asthma in either March or April 2024.

Plaintiff's request for medical attention was triaged on March 24, 2024.  (Doc. No. 50 at ¶ 17; Doc. No. 50-17).    It was determined that Plaintiff's request was emergent and he should be seen within 24 hours.  (Doc. No. 50 at ¶ 17; Doc. No. 50-17).    On March 25, 2024, LPN Crystal Rivers—not a party to this action—evaluated Plaintiff for his complaints and noted no fever, no emergent distress, a respiratory rate of 16, 99% blood oxygen saturation on room air, and no cyanosis present.  (Doc. No. 50 at ¶ 19; Doc. No. 50-19 at 1-2).    Earlier that same day another LPN saw Plaintiff for a segregation visit and noted no complaints.  (Doc. No. 50 at ¶ 18; Doc. No. 50-18).

On March 25, 2024, Mr. Williams was seen by Defendant Clinkscale at 1:40 pm for a segregation visit; she noted that Plaintiff no complaints.   (Doc. No 50 at ¶ 20; Doc. No. 50-20).

Over the next two days other non-party medical staff saw Plaintiff for segregation visits. (Doc. No. 50 at ¶ 21-23; Doc. Nos. 50-21 to 50-23).   No complaints were noted at any of these visits.   (Doc. No. 50 at ¶ 21-23; Doc. Nos. 50-21 to 50-23).

On March 27, 2024, Defendant Clinkscale saw Plaintiff for a segregation visit and noted no complaints.   (Doc. No. 50 at ¶ 24; Doc. No. 50-24 at 1-2).

Between March 27, 2024, and March 30, 2024, multiple non-party medical staff saw Plaintiff for a segregation visit.   (Doc. No. 50 at ¶¶ 25-30; Doc. Nos. 50-24 through 50-30).

When Defendant Hahn saw Plaintiff for a segregation visit on March 31, 2024, she also noted that Plaintiff voiced no complaints.   (Doc. No. 50 at ¶ 31; Doc. No. 50-31).

This trend continued for several more days.   Various non-party medical staff saw Plaintiff between March 31, 2024, and April 2, 2024.   (Doc. No. 50 at ¶¶ 32-36; Doc. No. 50-32 to 50-36).

On April 2, 2024, medical staff received Plaintiff's April 1, 2024, Health Services Request form related to Plaintiff's complaints of continued trouble breathing, headache, and stomachaches following exposure to smoke; Plaintiff was placed on the list to see a provider.   (Doc. No. 50 at ¶

37; Doc. No. 50-37).   A nurse Billingsley saw Plaintiff the following day in connection with these complaints.   (Doc. No. 50 at ¶ 40; Doc. No. 50-40 at 1-2).   She examined Plaintiff and noted that his respirations were even and non-labored and he exhibited no diaphoresis or cyanosis.   (Doc. No. 50 at ¶ 40; Doc. No. 50-40 at 2).   His respiratory rate was 18 and his oxygen saturation was 100% on room air.   (Doc. No. 50 at ¶ 40; Doc. No. 50-40 at 2).   Billingsley consulted with APRN Tracy Bennett who ordered naproxen for pain and a follow-up visit with a provider.   (Doc. No. 50 at ¶ 40; Doc. No. 50-40 at 2).

On April 4, 2024, non-party medical staff saw Plaintiff for segregation visits and noted that Plaintiff voiced no complaints.   (Doc. No. 50 at ¶¶ 41-42; Doc. Nos. 50-41 to 50-42).

Plaintiff had a follow-up visit with Bennett on April 5, 2024.   (Doc. No. 50 at ¶ 43; Doc. No. 50-43).   During the encounter Plaintiff's respirations were unlabored; his respiratory rate was 18; and his oxygen saturation was 99% on room air.   (Doc. No. 50 at ¶ 43; Doc. No. 40-43).   Plaintiff continued to complain of headaches a couple of times a week.   (Doc. No. 50 at ¶ 43; Doc. No. 40-43).   Plaintiff confirmed that his abdominal pain and shortness of breath were gone. (Doc. No. 50 at ¶ 43; Doc. No. 40-43).   Bennett ordered acetaminophen for pain relief. (Doc. No. 50 at ¶ 43; Doc. No. 40-43).

Between April 6, 2024 and November 15, 2024—the day on which Plaintiff filed this action—Plaintiff did not submit any sick calls or voice any complaints related to trouble breathing. (Doc. No. 50 at ¶ 44; Doc. No. 50-44).

**B.     Plaintiff's Response to Defendants' Motion**

Plaintiff contests only two facts offered by Defendants.   (Doc. No. 59).   Plaintiff maintains that despite what the medical records reflect, on March 18, 2024, he was seen by Defendants after he had been exposed to smoke in his cell.   (Doc. No. 59; Doc. No. 38).   In support of his position Plaintiff directed the Court to a grievance he initiated on March 25, 2024.

(Doc. No. 38 at 2).   In his appeal of the grievance, Plaintiff assert that mental health tech Esau made her round before "the toxic smoke hazard occurred" and that "shortly after the incident [he] was recommended by LPNs to place a sick call request to be seen by medical (Wellpath) for them to treat [him] for stomach and headache pain with (NaproxenL490) still failing to reinstate me on my inhaler."   (Id. at 5).

Because Plaintiff contested only these facts, all other facts offered by Defendants are deemed admitted.   Fed. R. Civ. P. 56(e); Rule 56.1 of the Local Rules for the United States District Court for the Eastern and Western Districts of Arkansas.

### C.   Analysis

Plaintiff's claims are based on Defendants' failure to provide him adequate medical care after Plaintiff was exposed to smoke in his cell; the exposure to the smoke allegedly exacerbated Plaintiff's asthma.   Plaintiff has not contested that in March or April, 2024, he did not have a diagnosis of asthma.   Plaintiff has not contested that he was not being treated for asthma at that time.   There is no medical evidence that Plaintiff suffered from asthma on March 18, 2024, when smoke filled his cell.

Without a medical condition diagnosed by doctor, Plaintiff's medical needs had to be so obvious that even a layperson would recognize the necessity for a doctor's care.   Starks v. St. Louis Cnty., 159 F.4th 1146, 1149 (8th Cir. 2025); Schaub v. VonWald, 638 F.3d 905, 914 (8th Cir. 2011).   Plaintiff asserts he saw Defendants when he was in a hall cell shortly after he was removed from his smoky cell on March 18, 2024.   (Doc. No. 59).   Plaintiff identified his symptoms only as stomachache, headache, and shortness of breath.   While he described himself as being "very ill," Plaintiff provided no further details about his symptoms.   (Doc. Nos. 58, 59). Even considering Plaintiff's earlier exposure to smoke, without more Plaintiff has failed to establish that stomachache, headache, and shortness of breath constituted a serious medical need.

Further, there is no evidence in the record that either Defendant ignored Plaintiff's needs. Plaintiff said "he was told by these nurses to place a sick call." (Doc. No. 58 at 2). Even if this was negligent, there is no liability for negligence under § 1983. Davis v. Hall, 992 F.2d 151, 153 (8th Cir. 1993). Rather, deliberate indifference requires a mental state "akin to criminal recklessness." Shipp v. Murphy, 9 F.4th 694, 703 (8th Cir. 2021). Plaintiff has not provided evidence from which a reasonable jury could find that Defendants acted with deliberate indifference to Plaintiff's needs.

Where, as here, Defendants have moved for summary judgment, Plaintiff "was required 'to discard the shielding cloak of formal allegations and meet proof with proof by showing a genuine issue as to a material fact.'" Fatemi v. White, 775 F.3d 1022, 1046 (8th Cir. 2015) (internal citation omitted). Plaintiff has not, however, met proof with proof to establish facts in dispute that would preclude summary judgment in favor of Defendants. Wilson v. Miller, 821 F.3d 963, 970 (8th Cir. 2016) (allegations must be substantiated with sufficient probative evidence); Bolderson v. City of Wentzville, Missouri, 840 F.3d 982, 986-87 (8th Cir. 2016) (noting plaintiff's duty to meet proof with proof in affirming summary judgment in defendant's favor). No reasonable jury could find a serious medical need or deliberate indifference to that need under the circumstances present in this case. Accordingly, the Court recommends Defendants' Motion be granted. Because all other claims against all other Defendants have already been dismissed (Doc. Nos. 39. 44), the Court will also recommend this case be closed.

## V.    Conclusion

IT IS, THEREFORE, RECOMMENDED that:

1. Defendants' Motion for Summary Judgment (Doc. No. 48) be GRANTED;

2. Plaintiff's claims against Defendants Clinkscale and Hahn be DISMISSED with prejudice.

8

3.      This case be closed.


Dated this 11th day of March, 2026.

 

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE